TOWN OF BENSON *v.* ROLLIN HITCHCOCK, *Administrator of* ELIZA ABELL.

### *Pauper. Contract.*

The defendant's intestate for several years received aid from the town as she needed it, in the same manner as other poor persons, no charge being made for the same. In 1858 she obtained a pension by aid of an attorney employed by the town at her request. Prior to this she frequently expressed to the overseers and others who assisted her in behalf of the town, a regret of her inability to pay for the aid she was receiving, and, subsequently, she frequently promised them that she would remunerate the town so far as she might be able, and that she wanted what was left of the pension money at her decease to go to the town. The pension money was drawn each year by the agents of the town and invested for her, and no portion thereof was retained or used by the town, or by the intestate, except the interest, which she used for her support. Upon the death of the intestate, the town presented a claim for the aid furnished. *Held,* that the question whether the parties understood that this support was furnished under a contract for repayment, or under statutory obligation, was one of fact, to be found by the auditor to whom the case was referred, and the allowance or disallowance of items determined how the auditor regarded the fact to be in respect to each.

*Held,* that her expressions of regret and gratitude created no legal obligation on her part; nor were her promises to pay, under the circumstances, conclusive.

THIS was an appeal from the decision and report of the commissioners of claims against the estate of Eliza Abell, by which certain claims in favor of the town of Benson, the appellant, against the estate of the intestate were disallowed; and, on the taking of the

appeal, the appellant filed in the probate court a declaration on book account against the intestate.

The case was referred to an auditor who reported in substance, that the plaintiff presented a book of records of the town of Benson, in which is recorded the accounts of overseers of the poor, and other accounts ; and interspersed with other accounts were the items of the plaintiff's account. The plaintiff kept no book and made no charges against the defendant other than as aforesaid, and the items of the account against the defendant were kept upon said book the same as the other accounts upon the book.

The auditor found that Eliza Abell was for forty years or more prior to 1861, an inhabitant of the town of Benson. She was about eighty years old when she died in April, 1862 ; her family consisted of herself, a daughter who was about sixty years old at her mother's decease, and a son, an idiot, who was a little younger. Mrs. Abell owned a house and lot in Benson worth three or four hundred dollars, on which she lived and kept one cow, and sometimes two. It did not appear that Mrs. Abell had any other means of support but this house and lot until she succeeded in 1858 in procuring a pension of forty-eight dollars a year, except what was provided for her by the town of Benson, and as to all the items of the plaintiff's account, commencing with and subsequent to March, 1855, the articles therein named were furnished to Mrs. Abell and delivered to her by the town of Benson, and the services were performed for her by said town, and the said articles and services were necessary for her support, and the rates are reasonable. As to the items prior to March, 1855, the auditor did not find that the articles were furnished to her. The only evidence to show the furnishing of articles in that portion of the account was the book above named. This finding was given subject to the opinion of the court upon the law applicable to the same.

It appeared that in 1858 Mrs. Abell was informed by the overseer of Benson that it was probable that she might procure a pension, whereupon she requested the said overseer to engage an attorney to prosecute the matter, which he did. The necessary services were performed and the pension was obtained, and the sum of $48. a year was drawn up to the time of her decease. The money was

drawn each year by the agents of the town, was put at interest, notes taken payable to Mrs. Abell, and the notes so remained until her decease, and no portion of this pension money was retained or used by the town, or by Mrs. Abell except the interest upon the same, as it became due from year to year, which she used towards her support. From these facts the auditor allowed, subject to the opinion of the court upon the law, the plaintiff's " account of expenses incurred by the town of Benson in obtaining a pension for Mrs. Eliza Abell," amounting to $30.42. Interest upon the same was allowed at $7.57. The auditor also allowed items for repairing fence and cutting hay $17.25. with interest.

The remaining items of the plaintiff's account amounted to $217.-13., and the interest to $82.78., commencing with March, 1855—amounting to $299.91. The auditor found that from said March, 1855, up to the closing of the plaintiff's account, the goods were furnished to Mrs. Abell, and the services performed for her as for other poor persons in the town of Benson who stand in need of relief; that prior to her obtaining a pension she often expressed to the overseers of said Benson and others a regret of her inability to pay for the aid she was receiving from the town, and subsequent to her receiving the pension she frequently promised to Amasa Briggs and J. J. Howard, then overseers of said town of Benson, and to others who were assisting her and providing for her in behalf of said town ; that she would remunerate the town for her support so far as she might be able ; that she said to said overseers at different times that she wanted what should be left of her pension money at her decease to go to the town. Mrs. Abell during the time she received aid from the town did all that was within her power to do to support herself. Upon these facts and the testimony, the auditor disallowed the residue of the plaintiff's account amounting as aforesaid with interest to $299.91., unless in the opinion of the court there was a legal and binding obligation upon Mrs. Abell—then the same is allowed.

The auditor further reported that the witnesses used by the plaintiff were inhabitants of the town of Benson and all testified under objection by the defendant. The following question by the plaintiff's counsel to A. Briggs and J. J. Howard, witnesses for the plaintiff,

37

was also objected to by the defendant, but the objection was over-ruled and the answer received, viz: "Whether at the time you furnished aid for Mrs. Abell, it was your intention to furnish such aid gratuitously or whether it was your intention that the town should be remunerated." The auditor found that the aid furnished while said Briggs and Howard were overseers of the town of Benson was not intended on the part of said overseers as a gratuity, but that the town should be remunerated.

After deducting $14.95. credits made by the plaintiff the auditor found there was due the plaintiff by the defendant the sum of $42.40., unless in the opinion of the court the aforesaid sum of $299.91 should be allowed,—in that case the sum due the plaintiff would be $342.31.

The cause was heard on the auditor's report at the September Term, 1864, AINSWORTH, Ass't J., presiding, and, on the hearing, the court *pro forma* rendered judgment in favor of the appellant for the sum of $342.31., and also for costs, and ordered that the judgment be certified to the probate court. To this judgment and order, the administrator of the estate of the said intestate ex-cepted.

*H. G. Wood* and *Prout & Dunton*, for the defendant, maintained that there was no express promise to pay this account, and as to the liability of a pauper to reimburse the town for support rendered, *the rule is* that it cannot be recovered without a *special* contract *for* re-payment. The law does not *raise* or *imply* any promise. *Bennington v. McGinness,* N. Chip. 45 ; 1 D. Chip. 44 ; *Groveland v. Milford,* 1 Allen, 23 ; *Deer Isle* v. *Eaton,* 12 Mass. 328.

*Nicholson & Ormsbee,* for the plaintiff.

The form in which the plaintiff's accounts were kept is of no im-portance. The validity of the account must depend upon other cir-cumstances altogether. *Bell* v. *McLeran,* 3 Vt. 185 ; *Reed* v. *Talford,* 10 Vt. 568. Mrs. Abell's language amounted to an unconditional promise to pay for the support she received. *Cummings et al.* v. *Gas-sett,* 19 Vt. 308 ; *Bennington* v. *McGenness,* 1 D. Chip. 44.

The inquiry made by the plaintiff's counsel to Briggs and Howard was unobjectionable, alike in substance and in form. *Newel* v. *Ex'r Keith,* 11 Vt. 214 ; *Bailey* v. *Bailey,* 16 Vt. 656.

Benson *v.* Hitchcock, Adm'r.

The plaintiff's witnesses were competent. *Pond q. t.* v. *Sage,* 1 D. Chip. 250 ; *Peacham* v. *Carter,* 21 Vt. 515.

PECK, J.    The intestate, if liable, must be liable upon the ground of a contract express or implied.    The auditor finds that what the town furnished for her support was furnished as for other poor persons in the town of Benson standing in need of relief.    This finding is in reference to the principal portion of the plaintiff's claim.    No charges were ever made against the intestate for what the town thus furnished for support, but the amount was picked out at the hearing from the records of accounts of overseers of the poor in the town clerk's office.    This rebuts the presumption and repels the idea of a contract for payment, and throws the burden on the town to show a contract for payment.    The auditor finds that prior to the intestate obtaining her pension in 1858, she often expressed to the overseers of the poor regrets of her inability to pay for the aid she was receiving from the town, and subsequent to receiving her pension, she promised some of the overseers who were assisting her in behalf of the town, that she would remunerate the town so far as she might be able, saying she wanted what should be left of her pension money at her decease, to go to the town.    It is clear that the same presumption of a contract does not arise in this case as in case of individuals, where one under no obligation renders aid and support to another. The intestate was practically a pauper, and the town was bound by law to furnish her with necessary support, and it was a question of fact for the auditor to find, whether it was mutually understood that the intestate was becoming debtor for what the town furnished her, or whether it was understood to be furnished under the obligation imposed by statute.    Her expressions of regret of her inability to pay, and her expressions of gratitude to the overseers, certainly would not create a legal obligation.    What the auditor finds in relation to her promise to pay as far as she was able, is not, under the circumstances, conclusive ; it depends on how the parties understood it.    The conduct of the town tends to show it was not understood in the light of a contract.    The town made no charges against her, but drew her pension from year to year from 1858, and instead of appropriating it to remunerate the town, the officers of the town loaned it out, taking notes payable to the intestate, and paying the

interest annually to her. With the exception of a few items, the auditor disallowed the plaintiff's account, and it must be taken that he found the fact that the support was furnished without any contract for payment or mutual understanding that any indebtedness was created. We are bound by this finding. But if the court were to pass upon the whole as a mixed question of law and fact, we should say the conclusion of the auditor disallowing the claim is well warranted from the facts reported.

The item for expenses of procuring the pension is somewhat of a different character. The intestate requested the town to employ an agent to procure the pension, and the town did so and paid the agent for his services and expenses. As the auditor has allowed this, it is to be presumed that he found that it was the mutual understanding that the town was to be paid. As to the other items which the auditor has allowed, the charges for cutting hay, making fence, &c., the auditor finds an express contract at the time for payment, and that the intestate did make some payments upon these items.

The items allowed by the auditor were properly allowed.

On the testimony of Briggs and Howard, in reply to a question to them as to their intention, the auditor finds that what was furnished by them while they were overseers, was not intended by them as a gratuity; but it is not found that the intestate so understood it, nor does it appear from the report that they furnished anything except what the auditor has allowed.

Judgment of the county court, which was for the larger sum, is reversed, and judgment for the plaintiff for the smaller sum, the $42.40. allowed by the auditor.