MONTGOMERY COUNTY v. GUPTON, *Administrator, Appellant.*

In Banc, May 25, 1897.

1. **Insane Poor:** RECOVERY BY COUNTY. In the absence of an enabling statute, a county can not recover from the estate of an insane pauper the money expended by the county in supporting such person at a lunatic asylum, when the county voluntarily paid the money without any agreement providing for its repayment.

2. ———: ———: STATUTE. C. had twenty acres of land worth $400 and was sent to a lunatic asylum for thirteen years at a cost of $1,826.35 to the county, which after her death tried to recover judgment against her administrator, and recovered to the amount of $600. Judgment reversed, the court holding that such suit could not be maintained under section 5557, which is as follows: "In all cases of appropriations out of the county treasury for the support and maintenance or confinement of any insane person, the amount thereof may be recovered by the county from any person who, by law, is bound to provide for the support and maintenance of such person."

3. ———: NECESSARIES: COLLATERAL ATTACK. · (By BARCLAY, C. J., *concurring.*)  The estate of a lunatic is presumptively liable for necessaries, but the inference of an obligation may be removed by evidence of a different intention in furnishing them.  An appropriation by a county court from the pauper fund to support an insane person can not be attacked collaterally, after the death of the beneficiary, so as to turn the charity into an obligation under the Missouri law touching the support of the indigent insane.  (R. S. 1889, secs. 511, 5558).

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED.

*Solomon Hughlett* for appellant.

(1) Any money expended by a county under the provisions of section 484 in the support of a county or pauper patient in the insane asylum creates no relation of debtor and creditor.  It is an expenditure of public money for the advantage of the insane person, perhaps, in some respects, but also for the advantage of the community and for the protection of the community.  So far as the patient receives the benefit it is a public gratuity, an expenditure made out of the public funds for her benefit, to which she is entitled as a matter of right by reason of her condition.  (2) The statute makes proper provision for pay patients at an asylum and for the transfer of county patients into pay patients when they acquire property above the amount allowed as exempt during their lifetime.  In this case it is conceded that Ellen Collins remained a county patient throughout the whole period of her confinement in the asylum, and it does not matter now how much money the county expended for her benefit, none of it can be recovered.  There can be no reimbursement unless the law provides for it.  There is no such thing as an implied contract between the county and an in-

dividual who receives the benefit of the proper expenditure of a general fund. As well may the estate of a convict be asked to pay the value of his board in the penitentiary or the expenses of his execution on the gallows.

*Ball & Ball* and *Robert Shackelford* for respondent.

(1) The county can recover, and in support of our theory we beg leave to refer the court to section 486, Revised Statutes 1889, also to sections 499 and 500, and especially do we wish the court to examine sections 511, 5556, and 5557, Revised Statutes 1889. *Deer-Isle v. Eaton*, 12 Mass. 328; *Stow v. Sawyer*, 3 Allen, 515; *Kennebunkport v. Smith*, 22 Me. 445; *City of Albany v. McNamara*, 117 N. Y. 168; *Benson v. Hitchcock*, 37 Vt. 567; *Charlestown v. Hubbard*, 9 N. H. 195; *Groveland v. Medford*, 1 Allen, 23; *Medford v. Larned*, 12 Mass. 215; *Lower Augusta Township v. Northumberland Co.*, 37 Pa. St. 143.

*Additional brief by respondent on rehearing in court in banc.*

(1) Section 5557, Revised Statutes 1889, as construed by Judge Brace in this case, is not broad enough to carry out the evident intention of the legislature at the time the act was passed, and places the lawmakers in an absurd light, or it would not have said that the county can recover in a case like this from any person legally bound to support the indigent insane person, and in the next breath say that his own legal representatives can not be required to do the same thing to the extent of the property of the ward, owned by him at the time of his death. (2) There is another point in reference to insane persons who have no guardian appointed, as was in the case here, and that is the doc-

trine announced in Phillips on Lunacy, page 17, in which the author holds the rule at common law now to be as follows: "The courts of law and equity imply a contract by one *non compos mentis* to pay for necessaries supplied to him," and so we say in this case that an insane person may be held and bound upon an implied promise as well as a person *compos mentis*, although he can not be liable on an express contract. Phillips on Lunatics, p. 17; *Sawyer v. Lupton*, 56 Me. 318; *Reando v. Misplay*, 90 Mo. 257, 258; *Darby v. Cabanne*, 1 Mo. App. 126.

### DIVISION ONE.

BRACE, J.—This action is upon a demand presented for allowance in the probate court of Montgomery county in favor of the county against the estate of Ellen Collins, deceased, for the sum of $1,826.35 for that amount of money paid by the county to the State lunatic asylum, at Fulton, for the support of the said Collins at the asylum, from the fifth of March, 1880, to the twenty-fifth of August, 1893, to which she had been sent as a county patient.

The demand was allowed in the probate court for the sum of $607.30, and an appeal taken by the administrator to the circuit court where, upon a trial *de novo*, the plaintiff recovered a judgment for $600. From which the administrator appealed to the St. Louis Court of Appeals, by which court the case was transferred to this court.

The facts are agreed upon and are as follows:

About the year 1880, Ellen Collins became violently insane, and, by an order of the county court of Montgomery county, was placed in the State lunatic asylum as a pauper patient, and was maintained in said asylum as a county patient of said county, as pro-

vided by law, from 1880 to the date of her death, August 25, 1893. During the time she was confined in the asylum, Montgomery county paid to the treasurer for her support in said institution the sum of $1,826.35. Of this sum $607.30 was paid by Montgomery county for her support within the last five years of her confinement in the asylum, immediately prior to her death. At the time she was sent to the asylum, she was owner in fee of twenty acres of land in Montgomery county, worth at that time about $400, and not worth now more than $400 or $500. To this land she acquired title from her husband, Patrick Collins, who occupied that land as a homestead up to the date of his death, which was about the year 1874. There were no children to the marriage, and Ellen Collins, as widow, was the sole heir of Patrick Collins. After his death, she occupied the land until she became insane. No guardian was appointed for Ellen Collins after she was placed in the asylum. The land remained in possession of her relatives who paid the taxes and received the rents. At the time of her death Ellen Collins left no husband or children. Her nearest kin and heirs are nieces and nephews, and from the time she was placed in the asylum to the date of her death, all of her expenses were paid by Montgomery county in the usual way out of the pauper fund, and the pending claim represents the amount so paid by Montgomery county for her support. Deceased had no other property, so far as is known, and owed no other debts. No attempt was made by Montgomery county during her lifetime to reach this tract of land to pay for her support. Possibly, for many years the county court had no knowledge that she owned the land.

The refusal of the court to sustain· a demurrer to the evidence presents the only question in the case, and that is, whether a county can recover from the estate

of a deceased insane person money expended by the county in maintaining such person during her lifetime in a State lunatic asylum as a county patient.

1.    The duty of supporting the indigent insane of this State is devolved by statute upon the counties of which they are inhabitants. R. S. 1889, secs. 7327, and 484, *et seq.*

It is well settled at common law that the provision made by law for the support of the poor is a charitable provision, from which no implication of a promise to repay arises, and moneys so expended can not be recovered of the pauper, in the absence of fraud, without a special contract for repayment. *Selectmen of Bennington v. McGennes*, 1 D. Chipp. 44; *Benson v. Hitchcock, Adm'r*, 37 Vt. 567; *Inhabitants of Deer-Isle v. Eaton*, 12 Mass. 328; *Inhabitants of Stow v. Sawyer*, 3 Allen, 515; *Charleston v. Hubbard, Adm'r*, 9 N. H. 195. A person so relieved, whether he had or had not property, never was liable to an action for such relief at common law. *Inhabitants of Groveland v. Inhabitants of Medford*, 1 Allen, 23. "The misjudgment of the officers of the poor as to the necessities of the person relieved, raises no implied promise on the part of such person that he will repay moneys expended in his behalf. *City of Albany v. McNamara*, 117 N. Y. 168. In view of these well settled principles of the common law, in many of the States laws have been enacted authorizing the recovery, by suit against the pauper, of moneys expended in his support. Such is the case in Pennsylvania, and it was upon a statute of this character that a recovery was upheld in *Directors v. Nyce*, 161 Pa. St. 82. But we have no statute of similar import. The only statute we have authorizing a recovery against any person for money expended in support of paupers is section 5557, by which it is provided that:

"In all cases of appropriations out of the county treasury for the support and maintenance or confinement of any insane person, the amount thereof may be recovered by the county from any person who, by law, is bound to provide for the support and maintenance of such person, if there be any of sufficient ability to pay the same."

Counsel for respondent insist that under this statute a recovery is authorized in this case, and the question is gravely asked: "If an action can be maintained against one who is legally liable for the support of the patient on account of an appropriation by the county, why could it not be maintained against the individual himself, or in case of his death against his administrator?" The obvious answer is: Because the right of action is purely a creation of the statute, and the statute gives it in the one case, and does not in the other. There is no principle of statutory construction to warrant the assumption that "a legal liability being upon others, if they are able pecuniarily to pay for the patient's support, the law will imply a promise on the part of the patient to pay for it himself, if able pecuniarily." Upon which the judgment in this case seems to have been based. The deduction is a palpable *non sequiter* and to give it effect is *simply judicial* legislation. Whatever argument may be urged in support of the proposition that such ought to be the law should be addressed to the legislature and not to the courts. The judgment is reversed. All concur, except BARCLAY, P. J., who dissents.

### IN BANC.

PER CURIAM.—The opinion heretofore delivered in the first division of the court by BRACE, J., is now adopted as the opinion of the court *in banc,* and accordingly the judgment of the circuit court is reversed

as directed in said opinion, all the judges concurring, BARCLAY, C. J., specially (as stated in the subjoined memorandum).

### MEMORANDUM.

BARCLAY, C. J.—According to the modern common law the estate of a lunatic is presumptively liable to answer for necessaries furnished for his support; but the inference of an obligation may be broken down by evidence of facts indicating a different intention of the person supplying such necessaries. *Rhodes v. Rhodes* (1890) 44 Ch. Div. 94. The law of Missouri permits a county to grant aid in the form of necessaries to an insane person from the fund for relief of the poor, even though such person is not wholly destitute of means. R. S. 1889, secs. 499, 511, 5558. Where such relief is granted by the county court, it seems to me (after an examination of all our statutory law on the subject) that the orders for such relief amount to a finding that the person aided is within the class which the statutes permit to be so aided. We must presume, in the absence of any contrary showing, that the county court acted correctly. It was competent for that court to grant to Mrs. Collins aid (in the form of necessary attention at the state asylum) notwithstanding she had a small estate of about $400. The action of the court in giving such relief can not be collaterally attacked after the death of the beneficiary so as to turn the charity into an obligation, in the absence of any special circumstances of fraud or other ground that might possibly furnish an exception to the rule stated.

Section 5557 gives an action to the county against certain relatives of the party assisted, despite the gratuitous character of the relief to the party himself. Those relatives could be held (even when the estate of

the party might not be) where there has been an exercise of the discretionary power of the court toward the party as an object of charity.   In my opinion the action of the county court of Montgomery, in favor of Mrs. Collins in her lifetime, must now be conclusively held an adjudication as to her being an indigent insane person under section 511; and hence the county can not recover for funds expended for her on that footing. These reasons lead me to concur in the final judgment of the court *in banc*.