CHARITON COUNTY, Appellant, v. HARTMAN.

**Division Two, June 20, 1905.**

1. **INSANE PERSONS: County Charge: Recovery By County.** Where a person has been adjudged insane and indigent and therefore supported by the county at an eleemosynary institution, and the guardian and curator of such person, while she is so supported by the county, recovers for her and in her name certain property, the county cannot recover from her curator and guardian, nor from her estate, the amount of the property by him so recovered, in payment to the county for money by it spent in her maintenance. An action of that character can be maintained only against the parent responsible for her support.

2. ———: ———: ———: **From Curator: Statute.** Neither at common law nor under the statute can the county recover from the guardian and curator of an insane person, personally or as the representative of her estate, money by it expended in maintaining the ward at a poor farm or an asylum, unless that curator is her parent and she a minor. The statute allowing a recovery by the county "from any person who, by law, is bound to provide for the support and maintenance of such person" has reference to parents of minor insane children.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*L. N. Dempsey* with *L. Benecke* for appellant.

The guardian in his representative capacity is the proper person to sue for the recovery of funds ex-

pended by the county in behalf of his insane ward. It is made the duty of the guardian of an insane person to pay for his support and expense out of the estate of such ward. R. S. 1899, secs. 3496, 558. The guardian in his representative capacity is liable to the extent of his ward's estate for necessaries furnished to the ward. Meyer v. Temme, 72 Ill. 574; Turner v. Flagg, 6 Ind. App. 563; Rooker v. Rooker, 60 Ind. 550; Hastings v. Bachelor, 27 Tex. 259; R. S. 1899, sec. 3696. The moment the guardian became possessed of means belonging to the estate of his ward, it became his duty to apply the same for support and maintenance of the ward. Failing to perform his duty in this respect, the county court acted in strict harmony with section 3697, Revised Statutes 1899, by instituting suit against him. Montgomery Co. v. Gupton, 139 Mo. 309.

*J. C. Wallace* for respondent.

FOX, J.—This was a suit instituted on the 15th day of October, 1901, in the Chariton County Circuit Court by appellant, as plaintiff, against respondent as defendant, seeking to recover money expended by Chariton county for the maintenance of Magdalena Miller, a person of unsound mind, of whom respondent was the legal guardian and curator.

The first amended petition upon which the case was tried, ommitting caption and signature, is in words and figures as follows:

"The county of Chariton, plaintiff, sues under the provisions of section 3697, Revised Statutes 1899, and for its first amended petition for cause of action states: That one Magdalena Miller was, on June 13, 1872, and for several years prior thereto had been, a resident citizen of the county of Chariton and State of Missouri, and that on the said 13th day of June, 1872, under due process of law, she was adjudged (by the county court of Chariton county) to be a person *non*

*compos mentis,* or insane, and at the time of adjudica-
tion she was also an indigent person and a proper sub-
ject to be made a charge upon the county of Chariton,
and that it was held and adjudged by said county court
of Chariton at said time, that she, said Madgalena Mil-
ler, be maintained as an indigent or poor person, at
the expense of the county of Chariton, either in an asy-
lum of this State or at the county poor farm of Char-
iton county; plaintiff further states that in compliance
with the finding and judgment of said county court said
Madgalena Miller was supported and maintained at
the expense of Chariton county, at either the State
insane asylum or at the county poor farm from said
13th day of June, 1872, up to this day, and is still an
inmate of the county poor farm at the exclusive ex-
pense of the county of Chariton aforesaid, being still
insane.

"Plaintiff further states that subsequent to said
13th day of June, 1872, to-wit, on the 2d day of Feb-
ruary, 1889, the above-named defendant, John T. Hart-
man, was, upon his application, appointed by the pro-
bate court of Chariton county, as guardian and curator
of said Magadalena Miller, and that he qualified as
such and has ever since acted as the duly qualified and
acting guardian and curator of the person and estate
of said Magadelena Miller, and plaintiff further states
that since his, said John T. Hartman's, appointment
as such guardian and curator, he has recovered and
become possessed of certain real estate and personal
estate, to-wit, one house and lot in the city of Bruns-
wick, and the sum of five hundred dollars belonging and
being the property of said ward, Magadalena Miller,
and which said money and property are still in the
hands of or under the control of said John T. Hart-
man as the guardian of said Magadalena Miller as
aforesaid.

"Plaintiff further states that after said John T.
Hartman became possessed of said real and personal

property as assets of the estate of his said ward, said Magdalena Miller, it became his duty to apply the same for the support and maintenance of his said ward, said Magdalena Miller, but said defendant, John T. Hartman, failed and refused to apply said funds and assets of his said ward to the support or maintenance of her, and also refused to reimburse plaintiff for the moneys paid by plaintiff for the support and maintenance of said Magdalena Miller, from the 13th day of June, 1872, continuously up to the present date, notwithstanding the fact that he, said John T. Hartman, well knew that said Magdalena Miller was supported and maintained entirely and exclusively at the expense of Chariton county as an indigent person.

"Plaintiff further states that by virtue of the premises, and the statutes as made and provided, plaintiff is entitled to recover of defendant the amount by it expended for the care and maintenance of said Magdalena Miller during the last five years, namely, the sum of five hundred dollars, being at the rate of one hundred dollars per year, and which sum defendant has on hand or available as assets belonging to the estate of his said ward, said Magdalena Miller aforesaid.

"Wherefore, plaintiff prays for judgment against defendant for the sum of five hundred dollars to be paid out of the assets of the estate of said Magdalena Miller and the costs of suit to be adjudged against defendant, John T. Hartman, personally, and for such further orders and judgments as may be right and proper."

To this petition, the defendant interposed a demurrer, as follows:

"The defendant comes now and demurs to plaintiff's first amended petition and for grounds of his demurrer assigns the following reasons:

"First. Because this court has no jurisdiction of the subject of the action.

"Second. Because this court has no jurisdiction of the person of the defendant in this: that the first amended petition shows defendant to be the duly qualified and acting guardian and curator of one Magdalena Miller, exercising authority as such under and by virtue of his appointment by the probate court of Chariton county, Missouri, and that said probate court has original jurisdiction of all matters pertaining to guardianship of insane persons in its said county.

"Third. Because there is a defect of parties defendant in this: that the first amended petition shows that if any cause of action exists it is against the therein named Magdalena Miller, an insane person, and she is the proper party defendant.

"Fourth. Because said first amended petition does not state facts sufficient to constitute a cause of action."

On the 7th day of May, 1902, this demurrer was submitted to the court and was by the court sustained, and final judgment rendered for defendant upon the demurrer, from which plaintiff, in due time and form, prosecuted this appeal and the record is now before us for review.

## OPINION.

It is apparent from the record that there is but one legal proposition presented to our consideration, that is the correctness of the action of the trial court in sustaining the demurrer to the petition filed in this cause.

Upon the consideration of the proposition presented, the demurrer must be treated as admitting every fact pleaded in plaintiff's petition to be true; hence the only question involved is, does the petition state sufficient facts, which if true, would entitle plaintiff to recover? The petition fully pleads all the facts. It is conceded by plaintiff that defendant's ward, Mag-

dalena Miller, was on June 13, 1872, and for several years prior thereto had been, a resident citizen of the county of Chariton and State of Missouri, and that on the said 13th day of June, 1872, under due process of law, she was adjudged (by the county court of Chariton county) to be a person *non compos mentis* or insane, and at the time of adjudication she was also an indigent person and a proper subject to be made a charge upon the county of Chariton and that it was held and adjudged by said county court of Chariton at said time, that she, said Magdalena Miller, be maintained as an indigent or poor person, at the expense of the county of Chariton, either in an asylum of this State or at the county poor farm of Chariton county. It is also made to appear from the allegations in the petition, that defendant, John T. Hartman, subsequent to the 13th day of June, 1872, to-wit, on the 2d day of February, 1889, was by the probate court of Chariton county appointed guardian and curator of said Magdalena Miller and qualified as such and has since such appointment recovered and become possessed of certain real and personal estate of his ward. Upon this state of facts is plaintiff entitled to recover? We have reached the conclusion that there could be no recovery. There is no contractual relation either express or implied between plaintiff and defendant Hartman or his ward.

The order of the county court of June 13, 1872, taking charge of Magdalena Miller as an indigent insane person was in pursuance of the statute, imposing the burden upon the counties of supporting their indigent insane, and the fact of furnishing support in pursuance of such order raises no implied promise to repay for such support. In Montgomery County v. Gupton, 139 Mo. l. c. 308, Brace, J., speaking for the court, thus disposed of this question: "It is well settled at common law that the provision made by law for the support of the poor is a charitable provision, from which

no implication of a promise to repay arises, and moneys so expended cannot be recovered of the pauper, in the absence of fraud, without a special contract for repayment. [Selectmen of Bennington v. McGennes, 1 D. Chip. 44; Benson v. Hitchcock, Adm'r, 37 Vt. 567; Inhabitants of Deer-Isle v. Eaton, 12 Mass. 328; Inhabitants of Stow v. Sawyer, 3 Allen 515; Charlestown v. Hubbard, Adm'r, 9 N. H. 195.] A person so relieved, whether he had or had not property, never was liable to an action for such relief at common law. [Inhabitants of Groveland v. Inhabitants of Medford, 1 Allen 23.] 'The misjudgment of the officers of the poor as to the necessities of the person relieved raises no implied promise on the part of such person that he will repay moneys expended in his behalf.' [City of Albany v. McNamara, 117 N. Y. 168.]''

It is insisted by appellant that this action can be maintained under the provisions of section 3697, Revised Statutes 1899. This section provides: ''In all cases of appropriations out of the county treasury for the support and maintenance or confinement of any insane person, the amount thereof may be recovered by the county from any person who, by law, is bound to provide for the support and maintenance of such person, if there be any of sufficient ability to pay the same.''

This action is nothing more nor less than one against the estate of the insane ward, and it is a misconception of the provisions of the sections quoted to say that such an action is contemplated by its provisions. It is apparent that section 3697 has reference to the relation of parent and child, and where a minor child becomes insane, and the county furnishes it support and maintenance, the father who, under the law, is bound to provide for the support and maintenance of his children, would fall within the provisions of that section, and a recovery could be maintained against him; but the statute falls far short of embracing within

its provisions actions against the guardian of the ward, personally, or against him as the representative of the estate. The principle announced in Montgomery County v. Gupton, supra, is clearly applicable to the case at bar. In that case the insane patient, Ellen Collins, had been furnished support and maintenance similar to the case at bar; subsequently an estate was discovered; she died and the court sought under the provisions of section 5557, Revised Statutes 1889, the same as section 3697, Revised Statutes 1899, to recover against her estate for such support and maintenance; it was held that such action was not embraced within the provisions of the statute and could not be maintained.

It may be that, after the discovery of an estate of an insane patient being cared for by the county and a guardian and curator having been appointed for such patient, some course might be pursued by the county or probate court in respect to such ward, as would compel the guardian and curator to furnish its support and maintenance out of the estate in his hands; but we think it is clear that this action, under the provisions of the statute, cannot be maintained.

With these views it results in the conclusion that the action of the trial court in sustaining the demurrer was proper, and its judgment should be affirmed, and it is so ordered.

All concur.