[S. F. No. 13889. In Bank.—July 15, 1930.]

G. H. HECKE, as Director of Agriculture, etc., Petitioner, v. RAY L. RILEY, as Controller, etc., Respondent.

U. S. Webb, Attorney-General, Frank English and Charles A. Wetmore, Deputies Attorney-General, and Bond & Deirup for Petitioner.

Thomas H. Christiansen for Respondent.

SHENK, J.—This is an application for a writ of mandate to compel the State Controller to honor a warrant drawn in favor of A. F. Mood in the sum of $2,478.

It is alleged in the petition that pursuant to the Land Settlement Act (Stats. 1917, chap. 755, p. 1566, as amended), the state land settlement board acquired on behalf of the state of California for the purpose of carrying out colonization projects provided for by said act certain lands in the county of Butte designated as Durham State Land Settlement, improved and subdivided said tract and sold and contracted to sell allotments thereof to settlers; that the board sold farm allotment No. 21 thereof, containing 24.78 acres, including a water right in Butte Creek, to A. F. Mood, and many other allotments to other settlers; that pursuant to statutory authority, the state land settlement board and its successors have constructed, operated and maintained and now operate and maintain an irrigation system and works to serve the lands in said colony. It is further shown that in 1929 the legislature amended sections 361e, 361f and 361g of the Political Code and added sections 361h and 361i thereto (Stats. 1929, p. 677). The latter two sections provide as follows:

"361h. Contracts of Purchase; Powers of Director of Agriculture in Regard Thereto. The director of agriculture, in accordance with plans approved by the State Land Settlement Board as provided in section 361i of this code,

shall have power to make such revisions of existing contracts of purchase executed under and by virtue of the land settlement act; to make such reductions in the sale prices heretofore fixed for land and improvements acquired pursuant to said act; allow or provide for the allowance of such credits or cash payments to purchasers who have executed contracts or acquired title from the state under said act; enter into such new contracts of purchase; accept such evidence of purchasers' obligations to the state other than those provided for in said land settlement act; execute such releases to settlers as may be necessary to carry out the purposes of this section; make such settlement of litigation between the settlers and the state; accept such agreements by the settlers to forbear the prosecution of future litigation against the state; repurchase properties from settlers holding contracts of purchase or deeds; make such sales or transfers of unsold land, easements, improvements, irrigation and drainage systems, and other property held in connection with state land settlements, or take such other action as may, in the judgment of the directors of agriculture, be necessary or advisable in the interest of the state or conducive to the success of any colonization project heretofore organized under and by virtue of said land settlement act or conducive to the safety or conservation of the investment of any state funds and to the welfare of settlers of any such colonization project.

"The director of agriculture is hereby empowered, in accordance with plans approved by the State Land Settlement Board as provided in section 361i of this code, to dispose of any and all land and property heretofore or hereafter acquired by the State Land Settlement Board or department of agriculture pursuant to the land settlement act, and to vest the title thereto in the grantees thereof, free from supervision and control by the director of agriculture and State Land Settlement Board, at such time or times, upon such terms and in such manner as he may, in his judgment, deem to be for the interest of the state. Any and all acts heretofore done by the director of agriculture or the State Land Settlement Board in conformity to the purposes and provisions of this section are confirmed and ratified.

"361i. Re-adjustment of Land Settlement Affairs; Duty of Director of Agriculture. It shall be the duty of the director of agriculture to prepare and present to the State Land Settlement Board for its approval on or before January 1, 1930, a plan or plans for the re-adjustment of land settlement affairs on a basis which will provide for the withdrawal of the state, not later than four months from and after the final adjournment of the forty-ninth session of the legislature of the state of California, from the conduct of land settlement or colonization projects. The State Land Settlement Board shall pass on said plan or plans and make such changes therein as the board may deem advisable. Such plan or plans as presented by the director of agriculture or as modified by the State Land Settlement Board shall be approved by said board and shall become the basis on which the director of agriculture shall proceed to effect the withdrawal of the state from the conduct of land settlements or colonization projects."

Pursuant to these sections of the Political Code, the petitioner, as Director of Agriculture, prepared two plans for the re-adjustment of land settlement affairs, one referring to the colonization project known as Delhi state land settlement and the other referring to said Durham State Land Settlement, and submitted them to the state land settlement board, which modified and approved them as modified. Pursuant to the plan of adjustment of the affairs of Durham State Land Settlement, there has been formed the Durham Mutual Water Company, Ltd., for the purpose of taking over and operating the irrigation system constructed, maintained and operated as aforesaid. The plan contemplates the subscription by each settler to shares of stock of the Durham Mutual Water Company and a transfer to the latter of the water rights owned by the settler, whereupon a cash payment or a credit will be made to each settler complying with the terms of the plan in consideration of the release and discharge of the state and its several participating agencies by each settler so subscribing to stock and releasing his water rights. Pursuant to that plan a contract was entered into with A. F. Mood reciting that Mood had subscribed for such stock and had executed a transfer of his water rights to said Durham Mutual Water Co., Ltd., and wherein it was agreed to allow Mood a cash payment of

$2,478 in consideration of his releasing the state and its named agencies and employees, etc., "from any and all claims and demands of every nature which, but for the execution of this release [the settler] would have or might claim to have arising out of any and all acts or omissions in connection with the lands hereinafter described under the land settlement act and under said sections of the Political Code, and from any and all obligations imposed upon or assumed by the state of California or any department or agency or officer or employee thereof under said land settlement act and said sections of said code to continue the administration of the Durham State Land Settlement or the operation of the irrigation system in connection therewith, and agrees to forbear the prosecution of litigation against the state of California or against any agency, department, officer or employee thereof arising out of any act done or omitted prior to the execution of this instrument in connection with the sale of the land hereinafter described and the possession and use thereof by the [settler] or in connection with the administration of the Durham State Land Settlement and the operation of said irrigation system."

It is alleged that the respondent refuses to allow the claim presented for the sum named in said agreement and to draw his warrant therefor upon the treasury of the state of California, although sufficient funds are available for said purpose.

It is contended by the respondent that sections 361h and 361i of the Political Code contravene section 31 of article IV of the Constitution prohibiting gifts of public moneys; section 25, subdivisions 15, 16 and 19 of article IV, providing that the legislature shall not pass special laws refunding moneys paid into the treasury or releasing or extinguishing, in whole or in part, obligations to the state, or granting special privileges; and section 21 of article I, prohibiting the legislature from granting to any citizen or class of citizens privileges which, on the same terms, shall not be granted to all citizens. It is also contended that the added sections impair the obligation of contracts; that there is an improper delegation of legislative authority; and finally, that the title of the act does not express the subject matter to which it relates.

We are not persuaded that there is merit in any of the contentions made by the respondent. It must be apparent from a reading of chapter 352 of Statutes of 1929 (Stats. 1929, p. 677), that the legislature has investigated the facts and has determined that the public welfare and the conservation of the investments made by the state in land settlement require that the state withdraw from land settlement and colonization projects. In other words, the legislature has stated that the venture is too expensive to the people of the state and if the state is not to lose any further funds, it must, in the interest of conserving and protecting the investments already made, withdraw from the projects on as favorable terms as may be obtained.

In 1917, by legislative enactment (Stats. 1917, p. 1566), the state land settlement board was created as a body corporate with rights and powers to buy and hold property, sue and be sued, etc., to the end that by lending to settlers the credit of the state the public purpose of improving the general economic and social conditions of agricultural settlers within the state may be carried out. Subsequently by amendatory acts various changes were made in the legislation and the Department of Agriculture finally became the successor to the state land settlement board, the latter having been retained in existence, however, for advisory and other purposes. (Stats. 1919, p. 838; Stats. 1921, pp. 12, 1039; Stats. 1923, p. 930; Stats. 1925, p. 358; Stats. 1927, p. 942; Stats. 1929, p. 677; see, also, *Meyer v. State Land Settlement Board*, 104 Cal. App. 577 [286 Pac. 743].) It is shown that at the present time large judgments have been obtained in actions brought against the state land settlement board and that other actions are pending, and that further litigation is threatened by other settlers. We may not go behind the facts found by the legislature in its investigation upon which its conclusion is predicated (*Stevenson v. Colgan*, 91 Cal. 649, 652 [25 Am. St. Rep. 230, 14 L. R. A. 459, 27 Pac. 1089].) When the legislature has stated that protection and conservation of the investments already made and the welfare of the settlements will be subserved by the withdrawal of the state from further responsibility in respect thereto, the legislature has stated a public purpose and whatever moneys are necessarily spent pursuant to the authority given, though incidentally

they may also benefit personally the settlers to whom such payments are made, do not constitute a gift of public moneys nor, where a credit rather than a cash payment is involved, does it constitute a release of an obligation in whole or in part in violation of the Constitution. (*Veterans' Welfare Board* v. *Jordan*, 189 Cal. 124, 140 [22 A. L. R. 1515, 208 Pac. 284] ; *Patrick* v. *Riley*, 209 Cal. 350 [287 Pac. 455].) We are of the opinion that the expenditure of the moneys and the allowance of credits authorized by the act to be made are for a public purpose, just as the lending of the credit of the state pursuant to the provisions of Statutes of 1917, page 1566, and acts amendatory thereof was for a public purpose. (See *Veterans' Welfare Board* v. *Jordan*, 189 Cal. 124 [22 A. L. R. 1515, 208 Pac. 284].) **[4]** Could this conclusion be seriously questioned, we are also of the opinion that a proper construction of the act leads to the conclusion that no payment of moneys or allowance of credit is contemplated unless the same be in consideration of the extinguishment of obligations existing or to arise against the state land settlement board or its successors by reason of their past conduct in the administration of the affairs of the settlements. We doubt that a release of an obligation existing in favor of the state based on a sufficient consideration is contemplated by the constitutional inhibition. This conclusion also answers the contention relating to the granting of special privileges; but, should the question be deemed important, we feel that the classification is proper and reasonable. It is to be noted that it is the same classification made by the Statute of 1917, page 1566.

We do not perceive any merit in the contention that the present legislation is an improper delegation of legislative authority. The amount of consideration to be paid for a release of the state's further participation in the affairs of the settlements in each individual case, pursuant to a so-called plan of withdrawal, and the plan of the settlement of claims in each case, are necessarily bound up with much detail. The delegation here does not seem to be greater than the discretion which was vested in the state land settlement board by the act of 1917, *supra*, relating to the purchase and sale of lands and the formulation of the prices, conditions and restrictions pertinent thereto. It would

seem that the legislative function is completed when the legislature has provided that the state shall withdraw from land settlement projects and the discretion vested relates only to the execution of the legislative enactment. (See *Mutual Film Corp.* v. *Ohio Industrial Com.*, 236 U. S. 230, 246 [59 L. Ed. 552, 35 Sup. Ct. Rep. 387, see, also, Rose's U. S. Notes].) We may not anticipate that a payment or an allowance will be made which will amount to an abuse of the authority granted. It must be assumed that the law reposing such authority and discretion in the board and the petitioner will be construed in conformity with the provisions of the Constitution and that their conduct will be so regulated. (*Veterans' Welfare Board* v. *Riley*, 188 Cal. 607, 624 [206 Pac. 631].)

We find no merit in the contention that the legislation impairs the obligation of contracts. The legislation is not self-executing. Rights of all parties remain as they existed before the legislation was enacted. They are left free to contract or not pursuant to any plan adopted.

The final contention that the subject matter is not expressed in the title appears also to be without merit. The act (Stats. 1929, p. 677) is entitled: "An act to amend sections 361e, 361f and 361g of article two-b of chapter three of title one of part three of the Political Code and to add two new sections to said article, chapter, title, and part of said code to be numbered 361h and 361i relating to the department of agriculture and the division of land settlement thereof." **[8]** It is now well settled "that the constitutional provision requiring the subject of the act to be expressed in its title must be liberally construed, and that all that is required to be contained therein in order to meet the constitutional requirement is a reasonably intelligent reference to the subject to which the legislation of the act is to be addressed. It is not necessary that it should 'embrace an abstract or catalogue of its contents.' " (*Estate of McPhee*, 154 Cal. 385, 389 [97 Pac. 878, 880].) We think the title is sufficient within the meaning of the statement made in *People* v. *Jordan*, 172 Cal. 391, 394 [156 Pac. 451, 453] that "Where the body of an act embraces provisions which are germane to the general subject stated in its title, the title will be held sufficient to comprehend all of the provisions of the act itself; and where the title

suggests to the mind the field of legislation which the text of the act includes, the title will not be held misleading or insufficient or the act restricted in its operation.''

We conclude that the enactment does not contravene the Constitution and that the agreement entered into with A. F. Mood pursuant thereto should be made effective. No material questions of fact are at issue. No other points of law need be discussed.

Let the peremptory writ issue.

Richards, J., Seawell, J., Waste, C. J., Curtis, J., and Preston, J., concurred.