[No. 23834.   Department Two.   August 19, 1932.]

SPOKANE COUNTY, *Respondent,* v. H. W. ARVIN, *as Guardian of the Estate of Thomas McHarg, Incompetent, Appellant.*[1]

*W. J. Lindberg* and *Cannon, McKevitt & Fraser,* for appellant.

*Chas. W. Greenough* and *A. O. Colburn,* for respondent.

MAIN, J.—Spokane county brought this action to recover from H. W. Arvin, as guardian of the estate of Thomas McHarg, an incompetent person, for food, lodging, medical care and other necessities furnished the ward. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the claim should be sustained. Judgment was entered directing the guardian to pay the claim which had been presented to him out of the

[1]Reported in 13 P. (2d) 1089.

estate of the ward in the sum of $840. From this judgment, the guardian appeals.

There is no dispute in the facts, and they may be stated as follows: Thomas McHarg, the incompetent person, prior to May, 1929, was employed as a trucker in the Northern Pacific Railway Company's freight house at Spokane. As such employe, he carried a group insurance policy in the sum of one thousand five hundred dollars. McHarg paid seventy cents a month premium upon the policy, which was for one thousand dollars, and the railway company paid on the other five hundred dollars.

During the month of May, 1929, it was reported to the county authorities that McHarg was acting peculiarly, and that he was apparently destitute. In response to this call, an investigation was made, and McHarg was taken into custody by the sheriff's office and sent to the county home for the indigent at Spangle. The county authorities made an investigation, and concluded that McHarg had no resources, and that he had no relatives who could be required to support him. After he was sent to the county home or county poor farm, he was taken care of in the ordinary manner as a destitute person.

Subsequent to June, 1929, the premium on McHarg's insurance policy was paid by the station employes' organization. The premiums thus paid amounted to $20.30. In March, 1931, the secretary of the organization paying the premiums suggested to an attorney that steps be taken to recover upon the total disability provision of the insurance policy. In pursuance of this suggestion, and on April 22, 1931, H. W. Arvin was appointed guardian of the estate of Thomas McHarg, and the latter was declared to be an incompetent person. Application was then made to the insurance company for payment upon the policy, and on

August 31, 1931, the company, under the disability clause, paid to the guardian the sum of one thousand five hundred dollars.

Upon receipt of the money, the guardian offered to pay the county for the keep of McHarg from that time on, but the county made a claim for his keep from the time he was first taken to the home, in the sum of $840. The claim was rejected by the guardian, and the present action was instituted. At the time McHarg was sent to the home, he had no property, and was destitute. The group insurance policy, held by McHarg at the time of his commitment, had no surrender cash value.

The question presented is whether the county had the right to recover from the guardian for the keep of the ward subsequent to his commitment and prior to the time that the insurance company paid the one thousand five hundred dollars to the guardian under the total disability clause in the policy.

In Rem. Comp. Stat., § 9982, it is provided that every poor person who shall be unable to earn a livelihood, in consequence of bodily infirmity or other cause, shall be supported by relatives stated therein, when directed to do so by the board of county commissioners, and if such relatives fail to comply with the order, they shall forfeit and pay to the county the sum of thirty dollars per month. Section 9983 sets out the order in which the persons mentioned in the preceding section shall be required to support a poor relative who, by reason of bodily infirmity or other cause, shall be unable to support himself. Section 9984 provides that, when any poor person shall not have relatives in any county in this state, such as are named in the two preceding sections, or such relatives shall not be of sufficient ability to "maintain such pauper, then the said

pauper shall receive such relief as the case may require out of the county treasury, . . . ''

As above stated, McHarg had no relatives who could be called upon to support him. It will be observed that in § 9984, in such a case, the duty is imposed upon the county to support the poor person. There being no statutory duty to pay for the support and no express contract to pay therefor, the inquiry must be directed as to whether there was an implied contract which would enable the county to recover.

In the absence of fraud, deception or duty imposed by statute to make reimbursement, or an express contract, the general, if not universal, rule is that the county cannot recover for the keep or support of a pauper out of an estate which came to him subsequent to the time that such support had been furnished. 48 C. J., p. 519; 21 R. C. L., p. 726; *Bremer County v. Curtis,* 54 Iowa 72, 6 N. W. 135; *Chester v. Underhill,* 16 N. H. 64; *Directors v. Nyce,* 161 Pa. 82, 28 Atl. 999; *Jones County v. Norton,* 91 Iowa 680, 60 N. W. 200. Many other authorities might be cited, but it does not seem necessary to multiply citations in support of a rule which is so well settled, and which is supported by the practically unanimous current of authority.

In the case of *McNairy County v. McCoin,* 101 Tenn. 74, 45 S. W. 1070, 41 L. R. A. 862, there is some language which would tend to support the county's position in this case, but the facts in that case were entirely different, in that, there, the ward had funds in the hands of his guardian at the time the support was rendered by the county, but that the guardian breached his duty to make support and permitted the ward to become a charge upon the county.

There is some contention that McHarg was not a poor person or a pauper within the contemplation of

the statute. But this question appears to us to have been definitely settled by the previous holdings of this court. It has been held that the term "poor person" or "pauper," as used in the statute, means a person who is without means of support, or destitute and dependent upon charity, but not necessarily one who is merely without financial resources. *Sweet Clinic v. Lewis County*, 154 Wash. 416, 282 Pac. 832; *Moss v. Moss*, 163 Wash. 444, 1 P. (2d) 916.

From the facts above stated, it clearly appears that McHarg was a poor person or a pauper within the contemplation of the rule stated in the two cases just cited. Since the guardian has expressed his willingness to pay for the keep of the ward subsequent to the time the one thousand five hundred dollars insurance money came into his possession, it is not necessary here to discuss or determine the form of the judgment or the matter of exemption.

The cause will be remanded to the superior court, with direction to modify the judgment in accordance with the views herein above expressed.

TOLMAN, C. J., BEALS, MILLARD, and HOLCOMB, JJ., concur.