[Civ. No. 32202. First Dist., Div. Four. June 7, 1973.]

ROBERT E. WINKELMAN et al., Plaintiffs and Appellants, v.
CITY OF TIBURON et al., Defendants and Respondents;
MARIN COUNTY PUBLIC HOUSING TENANTS' UNION et al.,
Interveners and Respondents.

## Counsel

Myers, Praetzel & Garety and Wallace S. Myers for Plaintiffs and Appellants.

Thelen, Marrin, Johnson & Bridges, Peter Anderson, Thomas P. Devitt, Philip R. Placier and Howard K. Morehouse for Defendants and Respondents.

Cecilia D. Lannon, David Bryson and Jan Chilton for Interveners and Respondents.

## Opinion

**BRAY, J.**\*—Plaintiffs-appellants appeal on a clerk's transcript from judgment of the Marin County Superior Court in favor of defendants-respondents.

### Questions Presented

1. The master plan for the Hilarita project conforms to the City of Tiburon's general plan.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

2. The project is not subject to referendum under article XXXIV, California Constitution.

3. There was no gift of public property.

## Record and Facts

Appellants filed a petition for mandate and complaint for declaratory relief to prevent the carrying out of a certain housing project which proposes the construction of a 112-unit housing unit in Tiburon. Appellants are owners of residential property adjacent to the real property involved and known as the Hilarita site. The Hilarita site was acquired by the United States government during World War II for the construction of a temporary housing project for Navy personnel. The temporary housing project was sold to the Housing Authority of the County of Marin (hereinafter referred to as the Authority) in 1955 for $58,000. Two and seven-tenths acres of the 15.5-acre site were sold to the Reed Union School District in 1968 for $64,000. Since acquiring the site, the Authority has maintained the location as a public housing project for persons of low income. The demolition date has been extended from time to time and finally was set for 1972, pursuant to Health and Safety Code section 35541.

At the time of incorporation of the City of Tiburon in 1964 the Hilarita site was zoned as a single family residential area. Tiburon Ecumenical Association (hereinafter referred to as TEA), a private nonprofit corporation seeking to construct and develop the proposed housing project, applied with the Authority to have the site rezoned for the purpose of constructing the project.[1] In response to this joint application, the City of Tiburon placed the Hilarita site in a planned development zone, thus allowing the construction of the housing project.

The housing project is to be built pursuant to an option contract by which the Authority gave an option to TEA to purchase 8 acres of the Hilarita site in order to construct 112 privately owned, moderate income, residential units. The option price is $56,000 with TEA to bear the cost of demolishing the existing structures and the Authority to have the right to lease 20 percent of the new units for use in its leased housing program under the United States Housing Act of 1937. The project will cost approximately $3,000,000 and will be financed from private sources by means of an FHA insured mortgage. In connection with the mortgage,

---

[1]In fact it was the Ecumenical Association for Housing, a private, nonprofit California corporation, that applied for the rezoning with the Authority, but the Ecumenical Association assigned its rights under the option contract with the Authority to buy the Hilarita site in April of 1970.

TEA has applied to the Department of Housing and Urban Development (hereinafter referred to as HUD) for interest reduction payments under the "Section 236" program (National Housing Act, 12 U.S.C. § 1715z-1). Under this program, federal subsidy payments are made to the mortgagee of a moderate-income housing project so that the mortgagor is only obligated to pay the principal plus interest at the rate of 1 percent per year. TEA has also applied to HUD for a "rent supplement" contract (12 U.S.C. § 1701s) for a "leased housing" approval or for a combination thereof so that 30 percent of the TEA project units may be rented to persons of low income. The "rent supplement" and "leased housing" programs are federal subsidy programs designed to enable persons of low income to rent privately owned and operated housing.

The master plan and the precise plan for the Hilarita project were presented to the Tiburon City Council and after public hearings by both the Tiburon Planning Commission and the city council, the master plan was enacted into law and the precise plan was approved.

In the pleadings and at the trial appellants asked the superior court to: (1) set aside a zoning ordinance enacted by respondent City of Tiburon permitting the TEA project, on the ground that certain preliminary findings made by the Tiburon City Council were without adequate evidentiary basis; (2) prohibit sale for $56,000 cash and other consideration by respondent Authority to TEA of the property on which the TEA project is to be built, on the ground that the sale is in fact a gift in violation of article XIII of the California Constitution; or alternatively, (3) postpone the sale and all action under the zoning ordinance pending a court-ordered referendum on the TEA project pursuant to article XXXIV of the California Constitution which applies to certain low cost housing projects.

At the trial all parties introduced documentary evidence and respondents produced oral testimony of two witnesses.

The trial court held for respondents on all issues. It found that: (1) the zoning ordinance was duly enacted since the city council's findings had both a rational basis and were supported by substantial evidence; (2) the consideration for the sale is adequate, and in any event the sale will be for a public purpose; and (3) article XXXIV does not apply because the TEA project is and will not be developed, constructed or acquired by a state public body. Judgment was entered accordingly denying the petition for writ of mandate and the complaint for declaratory relief.

Appellants appeal on the clerk's transcript alone.

## 1. *The Master Plan conforms.*

Appellants argue that, while the change of zoning of the Hilarita site from single family residential to a planned development zone was a legislative action and cannot be disturbed on review unless the action of the council was unreasonable, the adoption of the master plan for the project is a quasi-judicial step or administrative step which is a separate process from the enactment of a zoning ordinance and this court must determine if the finding that the master plan is in conformance with the general plan of the City of Tiburon is supported by substantial evidence. Appellants' argument is mainly based on the contention that the master plan for the project allegedly authorizes a greater number of units per acre than allowed under the general plan.

Respondents point out that when an appeal is taken on the clerk's transcript alone, it is conclusively presumed that the evidence before the trial court was sufficient to support the findings, and that the adoption of a master plan is a legislative act and therefore may be overturned only if found to be so unreasonable and arbitrary as to indicate an abuse of discretion. Furthermore, respondents argue it does not matter whether a rational basis or substantial evidence test is applied because the trial court found that the city council's findings had both a rational basis and were supported by substantial evidence.

In appellants' reply brief they argue that this court must determine if the findings of the city council are supported by substantial evidence as a matter of law. Their argument is that under the general zoning ordinance of Tiburon the city council is required to make factual determinations after a hearing at which evidence is taken in order to decide if the master plan should be approved and thus the city council's action is brought within the provisions of Code of Civil Procedure section 1094.5. Appellants state: "In a review of administrative action under Code of Civil Procedure section 1094.5, to determine if there is substantial evidence, the question for the Trial Court and the Appellate Court is one of law."

The trial court made the following findings:

"1. [By incorporation.] Both the rezoning of the property to a P.D. classification and the approval of the master plan and precise development plan for said property are legislative zoning actions of the City Council as contended by respondents and not quasi-judicial or administrative actions as contended by [appellants] and therefore the reasonable/rational evidence basis test should be used by the Court in reviewing said actions and not the substantial evidence test as contended by [appellants] . . .

The Court finds that the evidence before the City Council was clearly adequate to meet not only the reasonable/rational basis test but also substantial evidence test, that the City did not therefore abuse its legislative discretion, that the Court therefore should not interfere with its exercise thereof in that the challenged findings (b), (f) and (g) of Section 10:10(E) are sustained by the evidence received by the City Council, recognizing that evidence in opposition to such findings was also received by the City Council during the numerous hearings on said project.

"28. In February 1970, after public hearings by both itself and the Tiburon Planning Commission and after approval by the Planning Commission, the Tiburon City Council rezoned the 12.75 acres of the Hilarita to PD (Planned Development).

"29. On June 22, 1970, pursuant to Section 10-10 of the Tiburon General Zoning Ordinance (Ordinance No. N.5 . . .), upon presentation by TEA, and after numerous public hearings by both the Tiburon Planning Commission and itself and after approval by the Planning Commission, the Tiburon City Council enacted the Hilarita Master Plan into law by ordinance (Ordinance No. 51 N.5 . . .)

"30. On November 9, 1971, again upon presentation by TEA, and after public hearings by both the Tiburon Planning Commission and itself and after approval by the Planning Commission, the Tiburon City Council approved the Hilarita Precise Plan . . . by resolution (Resolution No. 399 . . .)

"31. In enacting and approving the Hilarita Master and Precise Plans, the Tiburon City Council complied with all requirements of law.

"32. In enacting the Hilarita Master Plan, the Tiburon City Council made all of the findings required by Section 10-10 of the Tiburon General Zoning Ordinance. In making such findings, the Council had before it and considered, *inter alia,* the following evidence: (1) the writings introduced herein by way of exhibit which all parties stipulated were before the Council; and (2) those facts and other matters which Miss Anne Ellinwood testified were before the Council."

■ Administrative mandamus lies pursuant to section 1094.5 of the Code of Civil Procedure when three conditions are met—"(1) by law a hearing is required to be given, (2) evidence is required to be taken, and (3) the determination of the facts is the responsibility of the *administrative agency.*" (*Gong* v. *City of Fremont* (1967) 250 Cal.App.2d 568, 572 [58 Cal.Rptr. 664]; italics added.) Thus, section 1094.5 applies only when a body is acting in a quasi-judicial function or administrative function.

██ However, the adoption of a master plan ordinance is a legislative act. (*City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 563 [90 Cal.Rptr. 843].) Tiburon General Zoning Ordinance section 10.10(E) states that the city council may approve a master plan by ordinance. *City of Sausalito* states that when a city council approves a master plan by ordinance, as was done in the instant case, the city council is acting in a legislative function. (*Id.*, pp. 564-567.) Therefore, here the city council was not taking a quasi-judicial step or administrative step when it enacted the ordinance approving the master plan for the Hilarita site and such action is not subject to review under section 1094.5 of the Code of Civil Procedure.

Thus, it is not a question of law whether there was substantial evidence to support the findings of fact. ██ In fact, since this appeal is taken on the clerk's transcript alone, it is conclusively presumed that the evidence before the trial court was sufficient to support the findings. In *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251], the rules applicable to appeals taken on a clerk's transcript alone were summarized: "the record before us consists properly of only the judgment, findings of fact and conclusions of law in support thereof, and the pleadings; we are not concerned with evidence taken in the trial court, either orally or through the admission of exhibits (whether or not said exhibits are incorporated into the clerk's transcript); we presume that there was substantial evidence to support the findings of the trial court; and we are confined to the questions whether the judgment is supported by the findings and whether reversible error appears upon the face of the record." This rule was reiterated in *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 454 [85 Cal.Rptr. 809, 467 P.2d 537], where the court said, "The sufficiency of the evidence to support the findings is not open to review."

Thus, the finding of the lower court that the master plan was in conformance with the general plan of the City of Tiburon is not subject to attack in this appeal on the clerk's transcript alone, and it is unnecessary to look at appellants' further contentions on the conformance issue.

### 2. *The project is not subject to referendum.*

Appellants contend that by virtue of article XXXIV of the California Constitution, it is required that the TEA project be approved by a referendum.[2]

---

[2]Article XXXIV provides:

"PUBLIC HOUSING PROJECT LAW

"*Electors Must Approve Low Rent Housing Projects*

"SEC. 1. No low rent housing project shall hereafter be developed, constructed or acquired in any manner by any state public body until, a majority of the qualified

Appellants' argument that the TEA project is subject to referendum is based on the idea that the Authority is co-developer and/or co-acquirer. Appellants admit that if the project is constructed by a private organization it is not subject to article XXXIV of the California Constitution. Appellants contend that in the instant case there has been unusual participation by the Authority so as to make it a participant in the construction of the project, to wit, allegedly selling the site on which the project is to be constructed for less than fair market value and leasing back more units than is the normal procedure under the "leased housing" program.

The trial court made the following finding: "[Appellants'] next contention is that the referendum provisions of Article XXXIV of the State Constitution applies to the project and that therefore the City should not be permitted to proceed further (i.e., issue building permits for the project) until the voters of the City of Tiburon have passed on the proposal. The Court rejects this contention by [appellants] for the following reasons:

"(1) That the project in question is not a 'low rent housing project' within the meaning of said Article even though up to 30% of the units will be available to persons of low income through the 'leaseback to Housing Authority' provisions of the option agreement and by the rent supplement program sought to be approved while the remaining units are limited to persons of moderate income [citations].

---

electors of the city, town or county, as the case may be, in which it is proposed to develop, construct, or acquire the same, voting upon such issue, approve such project by voting in favor thereof at an election to be held for that purpose, or at any general or special election.

"For the purposes of this article the term 'low rent housing project' shall mean any development composed of urban or rural dwellings, apartments or other living accommodations for persons of low income, financed in whole or in part by the Federal Government or a state public body or to which the Federal Government or a state public body extends assistance by supplying all or part of the labor, by guaranteeing the payment of liens, or otherwise. For the purposes of this article only there shall be excluded from the term 'low rent housing project' any such project where there shall be in existence on the effective date hereof, a contract for financial assistance between any state public body and the Federal Government in respect to such project.

"For the purposes of this article only 'persons of low income' shall mean persons or families who lack the amount of income which is necessary (as determined by the state public body developing, constructing, or acquiring the housing project) to enable them, without financial assistance, to live in decent, safe and sanitary dwellings, without overcrowding.

"For the purposes of this article the term 'state public body' shall mean this State, or any city, city and county, county, district, authority, agency, or any other subdivision or public body of this State.

"For the purposes of this article the term 'Federal Government' shall mean the United States of America, or any agency or instrumentality, corporate or otherwise, of the United States of America. [New section adopted November 7, 1950.]" (Italics added.)

"(2) The Court finds that the project in question is not being acquired, developed or constructed by the respondent Housing Authority of the County of Marin or any other State body within the meaning of Article XXXIV [citation]."

Apparently there are no cases which have interpreted article XXXIV of the California Constitution other than *James* v. *Valtierra* (1971) 402 U.S. 137 [28 L.Ed.2d 678, 91 S.Ct. 1331], in which the United States Supreme Court held article XXXIV constitutional on its face. However, this article has been considered in several opinions of the Attorney General. One Attorney General opinion held that as a general proposition, projects insured and subsidized under the "interest reduction" program, such as the project in the instant case, even when combined with a "rent supplement" program, do not fall within article XXXIV because they are projects "developed, constructed or acquired" by private parties and not by state public bodies. That is, in order for article XXXIV to be operative, the low rent housing must be developed, constructed or acquired by a *state public body*. (54 Ops.Cal.Atty.Gen. 168 [1971].) Appellants rely mainly on one proposition in this opinion: "However, we do wish to state that conceivably there could be unusual local governmental participation in a 'private development' which could in substance be tantamount to their constructing or to their developing or acquiring the project in question. Without intending to prejudge such situations either under Article XXXIV specifically, or state and federal law generally, the following possibilities are set forth as examples. A housing authority might donate land or sell land for a nominal consideration to a private developer for development under the 236 Program." (*Id.* at p. 171.)

TEA and not the Authority has and will design, plan, finance, construct, own and operate the TEA project. TEA and not the Authority has and will bear all of the contractual and financial risks associated with the TEA project. No property tax exemption will be obtained, and no Authority bonds will be issued. The term "develop" connotes the act of converting a tract of land into an area suitable for residential or business uses. (*People* v. *Embassy Realty Associates* (1946) 73 Cal.App.2d 901, 905 [167 P.2d 797].) Under this definition, it is clear that TEA and not the Authority is the one who is developing the TEA project. (We will consider hereinafter whether there has been unsual state involvement because the transfer of the Hilarita site is allegedly being made without adequate consideration.)

The trial court found that article XXXIV is not applicable to the TEA project because it is not essentially a "low rent housing project," and that

the TEA project will be primarily a moderate income project because no more than 30 percent of the units will be rented to persons of low income. As stated before, on an appeal on merely a clerk's transcript these findings cannot be challenged. But, if challenged, 47 Ops.Cal.Atty.Gen. 17 (1966) supports respondents' position that the TEA project is not a "low-rent housing project." The California Attorney General has held that a local housing authority does not acquire a "low-rent housing project" within the meaning of article XXXIV when it acquires some low rent housing units pursuant to the "leased housing" program.

Respondents contend that the TEA project is not subject to a referendum on the further ground that it is not a development but a redevelopment, as it is replacing a prior housing project. This argument need not be considered; as seen above, the project is not subject to referendum as it is being privately developed and it is not primarily a "low rent housing project." Furthermore, it is not clear whether the project should be considered a redevelopment as the existing housing project was constructed only as temporary war time housing for Navy personnel with a required demolition date of 1972. This site had not been dedicated to public housing as the site was zoned for single family residence when it was occupied by the Navy temporary war housing.

### 3. No gift of public property.

Appellants argue that the proposed sale under the option agreement will entail a gift in contravention of article XIII of the California Constitution and that the transfer was beyond the statutory powers of the Authority. Article XIII, section 25, of the California Constitution provides in relevant part: "nor shall [the Legislature] have power to make any gift . . . of any public money or thing of value. . . ." The trial court found that the sale was proper on two independent grounds: (1) the sale will be for an adequate consideration; (2) the sale will serve a public purpose. The lower court listed the consideration that the Authority will receive for the transfer as $56,000 cash, a commitment by TEA to lease back up to 30 percent of the housing units to the Authority, TEA's responsibility for demolishing the units presently on the site (which otherwise would have to be demolished at Authority's expense) and the project's assistance to the Authority in meeting its obligation to provide the County of Marin with a certain type of housing.

First, it should be noted that the trial court found that there was adequate consideration and that this finding of fact may not be attacked on an appeal on a clerk's transcript. (*Wheelright* v. *County of Marin,*

*supra,* 2 Cal.3d 448, 454.) But briefly considering appellants' contention, it is established that in order for a transfer to avoid being classified as a gift, the consideration given in exchange must be "adequate," so as to evidence a bona fide contract. (*People* v. *City of Long Beach* (1959) 51 Cal.2d 875, 881 [338 P.2d 177].) The consideration cannot be merely "nominal." (See *Allen* v. *Hussey* (1950) 101 Cal.App.2d 457, 467 [225 P.2d 674].) ▋ The law, however, does not require a weighing of the quantum of benefit received by a promisor or of the detriment suffered by a promisee where the consideration is plainly substantial. (*Blocksidge* v. *Broadway Sixth Co.* (1962) 207 Cal.App.2d 628, 632 [24 Cal.Rptr. 622].) Therefore, appellants' contention that the transfer must be for the fair market value is not supported by any authority that is cited in their brief; *Allen* v. *Hussey, supra,* 101 Cal.App.2d 457, 467, held only that a consideration of $1 was inadequate to support a lease of real property. ▋ Furthermore, there is nothing that is properly before this court that would show that the fair market value of the Hilarita site is greater than the consideration being paid therefor.

There is an alternative basis for rejecting appellants' contention that the transfer was in violation of article XIII, section 25, of the California Constitution. Since the sale of the Hilarita site to TEA will promote the public purpose of encouraging the construction of moderate and low income housing, it is not a gift of public funds within the prohibition of article XIII.

The meaning of article XIII has been before the courts on numerous occasions. In *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 281 [106 P.2d 11, 130 A.L.R. 1141], when the constitutional prohibition against making a gift of public funds was contained in article IV, the court explained: "It is well settled that, in determining whether an appropriation of public funds or property is to be considered a 'gift, the primary question is whether the funds are to be used for a 'public' or a 'private' purpose. If they are for a 'public purpose,' they are not a gift within the meaning of section 31 of article IV. [Citations.] The benefit to the state from an expenditure for a 'public purpose' is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefited therefrom. [Citation.]

"The determination of what constitutes a public purpose is primarily a matter for legislative discretion [citations], which is not disturbed by the courts so long as it has a reasonable basis." *Janssen* was cited by the California Supreme Court recently with approval when it stated: "The concept of public purpose has been liberally construed by the courts, and the Legis-

lature's determination will be upheld unless it is totally arbitrary." (*Mann-heim* v. *Superior Court* (1970) 3 Cal.3d 678, 691 [91 Cal.Rptr. 585, 478 P.2d 17].)

■ It is clear that providing housing for persons of low income is a public purpose for which public money may be spent. (Health & Saf. Code, § 34201, subd. (c); *The Housing Authority* v. *Dockweiler* (1939) 14 Cal.2d 437 [94 P.2d 794].) This leaves only the question if this public purpose may be fulfilled by a private corporation. In *People* v. *City of Long Beach, supra,* 51 Cal.2d 875, the California Supreme Court upheld the lease of a building by the City of Long Beach to the YMCA, even though the rent was set at $1 a year. Referring to the lease provision requiring the YMCA to provide a rest and recreation center for members of the armed forces and merchant marine, the court found that the lease did not violate the constitutional prohibition against the giving of public funds because the lease enabled the YMCA to carry out a public purpose. (See also *Redevelopment Agency* v. *Hayes* (1954) 122 Cal.App.2d 777 [266 P.2d 105].)

Furthermore, it is clear that the Authority had the power to transfer the property to TEA. Unlike many other state agencies which may only dispose of their surplus properties through the State Public Lands Commission, public housing authorities like the Authority in the instant case are specifically exempted from such requirements. Section 34315, subdivision (e), of the Health and Safety Code authorizes a housing authority to "Sell, lease, exchange, transfer, assign, pledge, or dispose of any real or personal property or any interest in it." Section 34320 of the Health and Safety Code states: "No law concerning the acquisition, operation, or disposition of property by other public bodies is applicable to an authority unless the Legislature specifically so states." The broad power conferred upon housing authorities by these sections was recognized by the California Supreme Court in *Ruben* v. *City of Los Angeles* (1959) 51 Cal.2d 857, 862-863 [337 P.2d 825]. It is thus clear that the Authority had the power to sell the site to TEA for adequate consideration to promote a public purpose.

Judgment affirmed.

Devine, P. J., and Good, J.,* concurred.

A petition for a rehearing was denied June 28, 1973, and appellants' petition for a hearing by the Supreme Court was denied August 1, 1973.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.