**KENAI PENINSULA BOROUGH, Appellant,**

v.

**TYONEK NATIVE CORPORATION, Appellee.**

No. S–2253.

Supreme Court of Alaska.

March 15, 1991.

Gerald L. Sharp, Peggy A. Roston, Preston, Thorgrimson, Shidler, Gates & Ellis, Anchorage, for appellant.

Karl Fulton Lehr, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

MATTHEWS, Chief Justice.

The Kenai Peninsula Borough (borough) appeals from a decision of the superior court which ruled that a tax parcel owned by the Tyonek Native Corporation (Tyonek) was exempt from taxation for 1985. The parcel consists of 385 acres located on the west side of Cook Inlet. In the early 1970's, Tyonek leased the parcel to Kodiak Lumber Mills, which constructed substantial improvements. These include a chip mill, warehouses, a 1475–foot dock, an air strip, 15 mobile homes, 4 bunk houses, 5 houses, 6 duplexes, 3 shop buildings, an office building, a recreation hall, a mess hall, a 400,000 gallon fuel tank farm, and sewage, water and electrical utilities. Kodiak Lumber Mills used the property until it went bankrupt in 1983. Tyonek then took possession. During the period the parcel was leased to Kodiak Lumber Mills it was included on the borough tax rolls.

In 1985 Tyonek claimed that the parcel was exempt from taxation under 43 U.S.C. § 1620(d), which provides that real property conveyed to village corporations under the Alaska Native Claims Settlement Act (ANCSA) is exempt from property taxation for 20 years so long as the property is "not developed or leased to third parties".[1] Tyonek also relied on a state statute, AS 29.-45.030, which exempts from property taxation land which is exempt under 43 U.S.C. § 1620(d).[2] AS 29.45.030(m)(1) purports to

---

**1.** 43 U.S.C. § 1620(d)(1) states:

Real property interests conveyed, pursuant to this chapter, to a Native individual, Native Group, Village or Regional Corporation or corporation established pursuant to section 1613(h)(3) of this title which are not developed or leased to third parties or which are used solely for the purposes of exploration shall be exempt from State and local real property taxes for a period of twenty years from the vesting of title pursuant to the Alaska National Interest Lands Conservation Act or the date of issuance of an interim conveyance or patent, whichever is earlier, for those interests to such individual, group, or corporation: *Provided,* That municipal taxes, local real property taxes, or local assessments may be imposed upon any portion of such interest within the jurisdiction of any governmental unit under the laws of the State which is leased or developed for purposes other than exploration for so long as such portion is leased or being developed: *Provided further,* That easements, rights-of-way, leaseholds, and similar interests in such real property may be taxed in accordance with State or local law. All rents, royalties, profits, and other revenues or proceeds derived from such property interests shall be taxable to the same extent as such revenues or proceeds are taxable when received by a non-Native individual or corporation.

**2.** AS 29.45.030 provides:

(a) The following property is exempt from general taxation:

define the word "developed" as used in the federal statute "unless superseded by applicable federal law" to mean "a purposeful modification of the property from its original state that effectuates a condition of gainful and productive present use without further substantial modification...." We have discussed at length the legislative history of 1620(d) as well as its interaction with the Alaska National Interest Lands Conservation Act (ANILCA) and AS 29.45.-030 in a companion case, *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487 (Alaska 1991).

Following a hearing, the borough assessor rejected Tyonek's claim of exemption on the grounds that although the property was no longer leased it was developed. Tyonek appealed this determination to the superior court. The superior court decided that the parcel was exempt, stating: "[I]t is clear that [Tyonek] is entitled to a moratorium on taxation so long as the property lies unleased or otherwise unproductive and idle." From this decision the borough appeals.

After filing its notice of appeal in this court, the borough sought a remand to the superior court for the purpose of filing a motion for relief from judgment under Alaska Civil Rule 60(b). Remand was granted. The borough contended before the superior court that new information had come to light regarding the use of the parcel which entitled the borough to relief under the fraud or misrepresentation subsection of the rule.[3]

The borough had obtained a copy of an agreement between Tyonek and Beluga Coal Company dated November 2, 1983 which was entitled "Option/Lease of KLM Facilities." Under this agreement Beluga was paying Tyonek $125,000 per year for an option to lease the parcel. The option, if exercised, would allow Beluga to lease the parcel for $250,000 per year. The term of the option was four years and the term of the lease would be ten years with renewal rights for three additional ten-year periods. Under the agreement Tyonek was required to use the option payments to maintain the facilities in reasonable condition, and to employ two caretakers. Further, the agreement provided that if third parties used the facilities on the parcel during the term of the option and paid Tyonek for their use, option payments required to be made by Beluga should be reduced by 60 percent of the payments.

....
(7) real property or an interest in real property that is exempt from taxation under 43 U.S.C. 1620(d), as amended.

....
(m) For the purpose of determining property exempt under (a)(7) of this section, the following definitions apply to terms used in 43 U.S.C. 1620(d) unless superseded by applicable federal law:
(1) "developed" means a purposeful modification of the property from its original state that effectuates a condition of gainful and productive present use without further substantial modification; surveying, construction of roads, providing utilities or other similar actions normally considered to be component parts of the development process, but that do not create the condition described in this paragraph, do not constitute a developed state within the meaning of this paragraph; developed property, in order to remove the exemption, must be developed for purposes other than exploration, and be limited to the smallest practicable tract of the property actually used in the developed state;
(2) "exploration" means the examination and investigation of undeveloped land to determine the existence of subsurface nonrenewable resources;
(3) "lease" means a grant of primary possession entered into for gainful purposes with a determinable fee remaining in the hands of the grantor; with respect to a lease that conveys rights of exploration and development, this exemption shall continue with respect to that portion of the leased tract that is used solely for the purpose of exploration.
(n) If property or an interest in property that is determined not to be exempt under (a)(7) of this section reverts to an undeveloped state, or if the lease is terminated, the exemption shall be granted, subject to the provisions of (a)(7) and (m) of this section.

3. Civil Rule 60(b)(3) states:
   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
   ....
   (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party[.]

Tyonek opposed the Rule 60(b) motion on the grounds that it was untimely since the borough had known of the agreement before the court's initial decision. Tyonek also contended that since the agreement was merely an option, it did not affect the merits of the court's decision. The trial court denied the motion, stating that there had been an insufficient showing that fraud, misrepresentation or other misconduct had occurred. From this order as well, the borough has appealed.

■ In our view the superior court erred in reversing the decision of the assessor rejecting Tyonek's claim of exemption. The critical question is whether the property was "developed" as that term was used in 43 U.S.C. § 1620(d)(1). The borough suggests as a working definition of the term that land is developed when it is converted "into an area suitable for residential or business uses." *Citing Winkelman v. City of Tiburon*, 32 Cal.App.3d 834, 108 Cal.Rptr. 415, 421 (1973). Tyonek, on the other hand, argues that the definition of "developed" under the federal act is controlled by the state definition set forth in AS 29.45.030(m)(1): " 'developed' means a purposeful modification of the property from its original state that effectuates a condition of gainful and productive present use without further substantial modification...." Tyonek argues that this definition means that there must be a current *actual* productive use of property rather than merely a current *potential* productive use.

Tyonek's argument that property to be developed must have an actual current productive use is contrary to the common understanding of the meaning of that term. It would mean, for example, that urban property on which an office building stands which is vacant because it has lost its tenant is not developed.

4. The equal rights clause of the Alaska Constitution is contained in article I, section 1, which provides:
  that all persons are equal and entitled to equal rights, opportunities, and protection under the law[.]

5. *See e.g., United States v. Atlantic Richfield Co.,* 612 F.2d 1132, 1139 (9th Cir.1980); *State v.*

There is no indication that Congress in enacting section 1620(d) as part of the 1971 Native Claims Settlement Act intended "developed" to have an uncommon or specialized meaning. Whether the term applies to a given parcel will not always be easy to determine, *see e.g., Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487 (Alaska 1991), but this case does not present a difficult question. There is no reasonable usage of the term "developed" that requires actual occupancy. The parcel here has been so extensively improved that it is necessarily developed within the meaning of section 1620(d).

■ The state statute, AS 29.45.030, enacted in 1983, is less clear. As noted, it defines "developed" as "a purposeful modification ... that effectuates a condition of gainful and productive present use without further substantial modification...." Whether this refers only to productive *actual* present uses rather than to productive *potential and actual* present uses is reasonably arguable. However, only the latter alternative is consistent with section 1620(d).

We construe the meaning of the term "developed" in the state statute to be consistent with the meaning of that term as used in ANCSA. We reach this conclusion for two reasons. First, AS 29.45.030(a)(7) expressly exempts only property which is also exempt under ANCSA. Second, if we were to construe the state statute to exempt property which is not exempt under ANCSA, serious and substantial questions concerning the constitutionality of this statute under the equal rights clause of the Alaska Constitution would be raised.[4] As statutes are to be construed to avoid a substantial risk of unconstitutionality where adopting such a construction is reasonable, we construe the state statute to be co-extensive with ANCSA.[5]

*Fairbanks North Star Borough,* 736 P.2d 1140, 1142 (Alaska 1987) ("This court is under a duty to construe a statute to avoid constitutional infirmity where possible."); *Veco International, Inc. v. Alaska Public Offices Comm'n,* 753 P.2d 703, 713 (Alaska 1988).

■ The only question under the state statute is whether the property "revert[ed] to an undeveloped state" according to AS 29.45.030(n) when Kodiak Lumber Mills went bankrupt. As the property was taxable both because it was developed and because it was leased, the termination of the lease, taken alone, did not suffice to render the property tax exempt. What was required, additionally, was a tangible change such as destruction or decay of the improvements, to constitute reversion to an undeveloped state. As no such change has occurred, the property remains taxable.

Our decision that the property is developed and therefore taxable moots the borough's appeal concerning its Rule 60(b) motion.

REVERSED and REMANDED.[6]

---

**6.** We express no view concerning whether the parcel has been limited "to the smallest practicable tract" of developed property as required by AS 29.45.030 as the issue is not before us, nor do we remand with directions to the superior court to determine that issue as it was not raised on appeal to the superior court.